IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ANGELA A. AKERS,

        Plaintiff,

v.                                                                                      Civil Action No. 2:13-CV-71

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

        Defendant.

## **REPORT AND RECOMMENDATION**

### **I. INTRODUCTION**

**A. Background**

On October 7, 2013, Angela A. Akers filed this action under 42 U.S.C. §§ 405(g) for judicial review of an adverse decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. §§ 401-433.[1] The Commission filed her answer on February 18, 2014.[2] Ms. Akers then filed her Motion for Judgment on the Pleadings on April 15, 2014,[3] and the Commissioner filed her Motion for Summary Judgment on April 30, 2014.[4] The motions are now ripe for this Court's review, and for this report and recommendation.

**B. The Pleadings**

    1. Ms. Akers's Motion for Judgment on the Pleadings and Memorandum in Support.

---

[1] Dkt. No. 1.

[2] Dkt. No. 9.

[3] Dkt. No. 15.

[4] Dkt. No. 17.

    2. Commissioner's Motion for Summary Judgment and Memorandum in Support.

**C. Recommendation**

    I recommend that:

1.     Ms. Akers's Motion for Summary Judgment be **DENIED** because (1) the ALJ properly followed HALLEX I-2-1-85 in seeking clarification of the Appeals Council's initial remand, (2) substantial evidence supports the ALJ's credibility finding as to Ms. Akers's based on the factors provided in *Craig v. Chater* and 20 C.F.R. 404.1529, and (3) the ALJ relied on a legally proper hypothetical.

2.     Commissioner's Motion for Summary Judgment be **GRANTED** for the reasons set forth.

## II.     FACTS

**A. Procedural History**

    On February 12, 2009, Ms. Akers applied for Disability Insurance Benefits (Title II) alleging a disability beginning February 12, 2008. (R. 19.) This claim was denied on July 20, 2009, and upon reconsideration on November 3, 2009. (*Id.*) On November 23, 2009, Ms. Akers requested a hearing by an Administrative Law Judge ("ALJ"). (*Id.*) On June 14, 2011, a hearing was held in Stockton, CA before ALJ Phillip E. Callis. (*Id.*) Ms. Akers, who was represented by counsel, Terri Isaac, Esq., testified at the hearing, as did the ("VE"). (*Id.*) On November 18, 2011, the ALJ issued an unfavorable decision finding that Ms. Akers was not disabled. (R. 16-28.)

    On December 15, 2011, Ms. Akers requested a review of the ALJ's decision. (R. 14.) On July 22, 2012, the Social Security Appeals Council remanded Ms. Akers's case back to the ALJ. According to the Appeal Council, the purpose of the remand was because:

> The Appeals Council was unable to take action on the claimant's request for review at the time it was filed because the Certified Electronic Folder does not contain an Exhibit List with permanently marked exhibits.
>
> The Appeals Council has been unable to redevelop the evidence. Because of this, the Appeals Council is unable to determine whether the decision is supported by substantial evidence. Accordingly, the Appeals Council finds that the claimant should have the opportunity for a new hearing and decision on the issues raised by her application.

(R. 12.) Subsequently, on August 13, 2012, Plaintiff retained Arla Ralston, a non-attorney in West Virginia, to represent her in her Title II claim. (R. 9.)[5]

On April 19, 2013, the Appeals Council vacated their prior order of remand. (R. 6.) The Appeals Council explained that "[s]ubsequent to the remand, the missing claims filed was located and associated with the record, which is now complete." (R. 7.) The Appeals Council granted an additional twenty day period "in which the claimant and representative may submit additional evidence and/or arguments." (*Id.*) On August 8, 2013, the Appeals Council denied Plaintiff's review, making the ALJ's November 18, 2011, decision final. (R. 3.)

**B. Personal History**

Ms. Akers was born on March 20, 1977 and was thirty-four years old on the date of the hearing before the ALJ. (R. 510.) Ms. Akers has four children. (R. 363.) At the time of the ALJ hearing, Ms. Akers testified that she was living with her ailing mother. (R. 511-12.) Akers has a GED. (R. 511.) Ms. Akers last worked full-time in 2008 as a hair stylist.

**C. Medial History**

*1. Physical Medical History*

---

[5] Plaintiff contends in her Dkt. 16 Brief that she obtained new, local representation because she lives in West Virginia.

On September 29, 2004, a MRI of Plaintiff's lumbar spine revealed disc herniation at L4-5 with associated disc dehydration dessication. (R. 493.) On November 30, 2004, Plaintiff underwent a laminotomy and foraminotomy at L4-5. (R. 490.) In 2007, another MRI of the lumbar spin was preformed which showed "[d]egenerative changes at L4-L5 with a central and left-sided herniated nucleus pulposus." (R. 488.) While hospitalized for psychiatric conditions, Dr. Syed Safiullah, M.D., noted that Plaintiff had "[n]ormal range of motion in extremities" but "has decreased extension and flexion in [her] back." (R. 481.)

On February 25, 2008 and March 5, 2008, Plaintiff entered Appalachian Regional Hospital complaining of back pain and pain in her left leg. (R. 465-68, 457-61.) On March 18, 2008, Plaintiff was examined by New River Health in Scarbro, West Virginia. (R. 361.) The examination concluded that Plaintiff's hips were symmetrical, but Plaintiff had a decreased range of motion on forward flexion to about forty-five degrees. (*Id.*)

On June 2, 2009, Dr. Rogelio Lim, M.D., performed a physical residual functional capacity assessment ("RFC") on Plaintiff. (R. 408-15.) Dr. Lim found Plaintiff could: (1) occasionally lift or carry twenty pounds and frequently lift or carry ten pounds; (2) stand and/or walk about six hours in an eight-hour workday and sit about six hours in an eight-hour workday; (3) push and/or pull without limitations; (4) occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never ladders, ropes, or scaffolds; and (5) avoid extreme cold and vibrations. (*Id.*)

On May 7, 2010, during an examination at New River Health Services, Plaintiff was able to flex to approximately seventy-five degrees with some pain. (R. 355.) However, Plaintiff was unable to extend her back and experienced pinching and pain down her left leg when attempting lateral bending. (*Id.*) On May 20, 2010, a MRI of the lumbar spine revealed disc disease and face

4

arthropathy. (R. 334.) On October 11, 2010, Dr. Scott D. Daffner. M.D., reviewed another MRI and observed "a small left-sided disk bulge and mild narrowing at the L4-L5 level" and "evidence of a left-sided lamintomy at L4-L5 level." (R. 339.)

*2. Psychiatric Medical History*

On July 24, 2007, Plaintiff was admitted to Appalachian Regional Hospital for depression and suicidal thoughts. (R. 342.) Dr. Syed diagnosed Plaintiff with bipolar affective disorder and panic attacks. (*Id.*) Afterwards, Plaintiff attended multiple follow-up appointments, the first being on March 25, 2008. (R. 363.) During Plaintiff's March 25, 2008 appointment, Dr. Sunita Singh, M.D., observed that Plaintiff was "fully alert and oriented," in a good mood, had "[n]o suicidal thoughts or homicidal" intent, and had no "psychotic symptoms." (*Id.*) However, on April 30, 2009, Plaintiff was diagnosed with major depressive disorder, anxiety, adjustment disorder, alcohol dependency, and cannabis abuse. (R. 243.) During a May 7, 2009 appointment with Dr. Aditya Sharma, M.D., Dr. Sharma noted that Plaintiff reported "mood swings and her mood is unstable." Further, Plaintiff "report[ed] feeling very depressed." (R. 368.)

On June 2, 2009, Lester Sargent, M.A., conducted a mental status examination on behalf of the West Virginia Disability Determination Service. (R. 417.) Mr. Sargent found that Plaintiff was able to perform domestic chores, including cooking, laundry, dishes, and sweeping, before succumbing to back pain. (*Id.*)

On July 18, 2009, Dr. Holly Cloonan, Ph.D., conducted a RFC of Plaintiff. (R. 386-88.) Dr. Cloonan found in her assessment that Plaintiff was only moderately limited in the ability to: (1) interact appropriately with the general public; (2) accept instructions and respond appropriately to criticism from supervisors; (3) get along with coworkers or peers without distracting them or

5

exhibiting behavioral extremes; and (4) respond appropriately to changes in the work setting. (*Id.*)

On March 30, 2010, Plaintiff underwent a psychiatric evaluation concerning opioid detox and polysubstance dependence. (R. 374.) Plaintiff admitted to using marijuana since she was fifteen and using cocaine, methamphetamine, morphine, lortab, oxycodone, and "anything that she can get her hands on." (*Id.*) During a follow-up appointment on April 15, 2010, Plaintiff denied any opioid abuse since March 30, 2010. (R. 381.) From April 29, 2011 to May 16, 2011, Plaintiff was treated at San Joaquin Behavioral Health Services in Stockton, California. (R. 320-25.) While in California, Plaintiff was diagnosed with depression and anxiety. (*Id.*)

**D. Testimonial Evidence**

Testimony was taken at the ALJ hearing held on June 14, 2011. The following portions of the testimony are relevant to the disposition of the case:

Plaintiff appeared via telephone and elected through her attorney to have a telephone hearing rather than a hearing in person. (R. 507.) First, the ALJ questioned Plaintiff. Plaintiff testified that she last worked full-time in 2008 as a hair stylist. (R. 510.) She briefly worked again in 2010 but ceased due to "back pain" and "mental problems." (R. 511.) Plaintiff testified that she had not used any drugs or alcohol since February 26, 2010. (R. 512.) She testified that she last sought treatment for her back pain in 2010 at West Virginia University Hospital in Morgantown, West Virginia. (R. 513.) Plaintiff testified that WVU Hospital recommended physical therapy. (R. 514.)

Next, Plaintiff was examined by her counsel. Plaintiff testified that she has hip pain that extends to her legs in combination with back pain. (R. 515.) Plaintiff testified that the pain is constant and limits her ability to walk for any period longer than twenty minutes. (*Id.*) She testified that she can carry groceries, assist her mother with cooking and cleaning, and drive for roughly

6

thirty minutes before feeling pain. (R. 515-16.) She testified that she has difficulty dressing herself. (R. 517.) Plaintiff has not used any assistive device to walk since 2008. (*Id.*) Plaintiff testified that suffers from extreme mood shifts. (R. 518.)

Mr. Stinson, a VE, also appeared and gave testimony at the hearing. Mr. Stinson testified about Plaintiff's previous employment. (R. 521.) Previously, Plaintiff worked primarily as a hair stylist and obtained licensing. (*Id.*) At one time, Plaintiff was an instructor at a beauty school. (*Id.*) During the mid-to-late 1990s, Plaintiff worked as a housekeeper and in a fast food restaurant. (*Id*.) According to the VE, the skill ranges of her previous employment ranged from unskilled (fast food employee and housecleaning) to skilled work (hair stylist and instructor). (*Id.*)

Next, the ALJ posed the following hypothetical to the VE:

> if the claimant had a residual functional capacity . . . of doing light work. Occasional posturals except no ladders, ropes, or scaffolds. And avoid concentrated exposure to extreme cold and vibrations. Further limited to simple repetitive tasks with limited contact with the public and co-workers. Can [Plaintiff] do her past relevant work?

(R. 522.) After establishing that such a hypothetical person could not perform Plaintiff's past work, the ALJ asked whether other jobs existed in the regional or national economy that such a person could perform. (R. 523.) The VE listed three unskilled, light positions. (R. 524.) Those positions were: merchandise marker (DOT Number 209.587-034); packing line worker (DOT Number 753.687-038); and sorter (DOT Number 529.687-186). (*Id.*) The ALJ then inquired if there were other jobs in the regional or national economy with the same limitations in the previous hypothetical but at the sedentary level. (*Id.*) The VE listed three sedentary positions: document preparer (DOT Number 249.587-018); addresser (DOT Number 209.587-010); and sit down assembler (DOT Number 713.687-018). (R. 525.) With an added limitation of a sit/stand rotation, the VE testified

7

that the document preparer and addresser positions would still be available. (*Id.*) Finally, the VE testified that an individual would not be employable if they were unable to complete an eight-hour workday or miss more than two days per month due to injury or illness. (R. 527.)

## III.  THE MOTIONS FOR SUMMARY JUDGMENT

### A. Contentions of the Parties

Plaintiff contends there were multiple errors in this case: (1) the Social Security Administration failed to follow the correct procedures for clarifying and vacating a remand, thus the July 11, 2011 decision remanding the decision for another hearing should be followed; (2) the ALJ's decision that Plaintiff's statements concerning the intensity, persistence, and limiting effects of pain were not credible is not supported by substantial evidence; and (3) the ALJ's decision relied upon an incomplete hypothetical that failed to take into consideration all of Plaintiff's limitations. The Commissioner maintains that the procedural history of this case does not warrant a second hearing and substantial evidence supports the ALJ's assessment of Plaintiff's RFC.

### B. The Standards

*1. Summary Judgment*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion

for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

*2. Judicial Review*

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

*3. Social Security - Claimant's Credibility*

"Because he had the opportunity to observe the demeanor and to determine the credibility of the Claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)). "We will reverse an ALJ's credibility determination only if the Claimant can show it was 'patently wrong'" *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (quoting *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)).

9

## C. Discussion

*1. Appeals Council Original Remand*

Plaintiff contends that the July 11, 2011 decision by the Appeals Council to remand the case back to the ALJ should be binding in this case. According to the Appeals Council, Plaintiff's case was initially remanded on July 11, 2011 because the Certified Electronic Folder did not contain an exhibit list with permanently marked exhibits. Plaintiff contends that (1) the ALJ had the authority and ability to follow the July 11, 2011 remand order and (2) the remand is not moot. Additionally, Plaintiff argues that because the ALJ did not mail Plaintiff a notice, "the EDO should have returned the case for failure to notify the claimant." Plaintiff further alleges that the record still does not contain an exhibit list.

An ALJ has the ability to seek clarification of an Appeals Council remand. *See* HALLEX I-2-1-85. However, clarification can be sought "only when the ALJ cannot carry out the directive(s) set forth in the order, or the directive(s) appears to have been rendered moot." I-2-1-85(A). An example of directive appearing moot is when the Appeals Council "remands a case for a new hearing solely because the hearing recording cannot be located. The hearing recording is subsequently found and is determined to be audible, and a new hearing has not yet been held." I-2-1-85(B)(2).

If a directive by the Appeals Council appears to be moot, there are two distinct steps the ALJ must undertake to request formal clarification. First, the ALJ requests, in writing, a concurrence from the Regional Chief Administrative Law Judge ("RCALJ"). I-2-1-85(C)(1). If the RCALJ agrees with the clarification by the ALJ, the RCALJ will request a concurrence, in writing, from the Chief Administrative Law Judge ("CALJ"). *Id.* Once this first step is completed, the ALJ may request clarification via a written or emailed request. I-2-1-85(C)(2). The ALJ *may* notify claimant

10

and any representative of the clarification request. *See id.*

In this case, the original ALJ decision was remanded because the an Exhibit List with permanently marked exhibits was missing from the Certified Electronic Folder. In correspondence with the RCALJ, the ALJ explained that the List was missing because "[t]he file in this case has been converted to a paper file . . . . Moreover, the file was pulled by the Streamlined Pulling method, in which documents are not exhibited, but are numbered 1 through ___ ." (Dkt 19-4.) This situation is almost identical to the example provided in HALLEX I-2-1-85(B)(2). Thus, the Appeals Council's directive was likely moot and the ALJ had authority to seek a clarification.

In seeking clarification, the ALJ properly followed HALLEX guidelines. On February 19, 2013, the ALJ requested concurrence with the RCALJ in this case. (Dkt. 19-4.) The Office of the RCALJ sent an email on February 26, 2013 concurring with the ALJ and agreeing to forward the request for clarification to the CALJ pursuant to HALLEX I-2-1-85(C)(1)(b). (Dkt. 19-5.) Though the record is unclear, the Appeal Council then vacated its prior order of remand of April 19, 2013. (R. 7.) It can be assumed either the (1) CALJ approved the ALJ's clarification request and the ALJ sent a formal request for clarification or (2) the Appeals Council identified the missing permanently marked exhibits prior to the ALJ's completed clarification request and preemptively vacated their own remand. In either instance, HALLEX I-2-1-85 was properly followed. Contrary to Plaintiff's contention, even though the Appeals Council "*generally* will not accept clarification requests without corresponding documentation that the claimant and representative . . . have been notified," it is not necessary for the ALJ to submit notification to a claimant at this step. *See* HALLEX I-2-1-85 (emphasis added). Thus, the Commissioner is correct that the procedural history of this case does not warrant remand for a second hearing.

*2. ALJ's Credibility Analysis*

Plaintiff's second argument is that the ALJ erred in his credibility assessment. Specifically, Plaintiff contends that "there is ample evidence, both subjective and objective, to support [Plaintiff's] allegations regarding the severity of her pain." The Commission argues that substantial evidence supports the ALJ's original assessment.

The Fourth Circuit stated the standard for evaluating a claimant's subjective statements of pain and other symptoms in *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). Under *Craig*, the determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment reasonably likely to cause the symptoms alleged. *Id.* at 594. "It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. In making this evaluation, the ALJ must consider not only the claimant's subjective statements about his symptoms, but also the claimant's medical history, other objective evidence of pain, and "any other evidence relevant to the severity of the impairment." *Id*. While the ALJ may not reject a claimant's subjective statements solely because they are not substantiated by the available objective evidence, he need not credit them to the extent they are inconsistent with the objective medical evidence. *Id.*

The regulations set forth certain factors for the adjudicator to consider to determine the extent to which the symptoms limit the claimant's capacity to work:

> 1) The individual's daily activities; 2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) Factors that precipitate and aggravate the

12

> symptoms; 4) Type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and 7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. 404.1529(c) and 416.929(c) (2010). Accompanying factors that the adjudicator must also consider when assessing the credibility of an individual's statements are provided in SSR 96-7p. These factors include: medical signs and laboratory findings, diagnosis, prognosis, and other medical opinions provided by medical sources; and statements and reports about claimant's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the claimant's symptoms and how the symptoms affect the individual's ability to work. SSR 96-7p.

The record illustrates that the ALJ evaluated Claimant's symptoms in accordance with the two-part test in *Craig* and the factors outlined in 20 C.F.R. 404.1529 and SSR 96-7p. In step one of the *Craig* test, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" testified by Plaintiff. (R. 26.) Next, in accordance with the factors set out in 20 C.F.R. 404.1529 and SSR 96-7p, the ALJ considered whether claimant's subjective statements regarding his symptoms were substantiated by, or conflicted with, the objective evidence in the record, and found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC]." (*Id.*) Further, the ALJ found that Plaintiff "is an unreliable reporter because the medical records reflect that she describes back pain on many occasions, but on other occasions

(2007, 2009 and 2011) indicates a normal routine history and physical." (*Id.*)

The ALJ cited a March 20, 2011 examination where Dr. Khalid Hasan, M.D., noted that Plaintiff's physical portion of the exam indicated "unremarkable" back pain or at least pain "within normal limits." (R. 26.) The ALJ also discussed Dr. Cloonan's[6] July 18, 2009, assessment that the claimant was "mostly credible" with exception to report recent substance abuse. (R. 26, 402.) In the same assessment, Dr. Cloonan concluded that Plaintiff was only "moderately limited in her ability to interact with the public" and "was not significantly limited with regard to understanding, memory, sustained concentration or pace." (R. 26.) The ALJ places "substantial weight" on Dr. Cloonan's RFC because "[t]he record does not contain any opinions from treating or examining physicians indicating that the claimant, in the activities of daily living, has anything other than mile restrictions." (*Id.*)

Based on this thorough and detailed review of the evidence, the ALJ concluded that the Plaintiff was not credible and does not accept medical findings or opinions that are based solely or primarily upon the claimant's subjective complaints. (*Id.*) Accordingly, this Court finds that the ALJ correctly followed the *Craig* test in evaluating Plaintiff's subjective symptoms. Additionally, the Court finds there is substantial evidence to support the ALJ's credibility determination.

*3. Incomplete Hypothetical*

Plaintiff's last contention is that the ALJ erred by placing great weight on the RFC that failed to include any limitations on Plaintiff's ability to sit or stand for significant periods of time. "While

---

[6] In the ALJ's November 18, 2011 decision, he refers to a "Dr. Cloogan." (R. 26.) A thorough review of the record suggests the ALJ intended to cite Dr. Holly Cloonan, the author of Plaintiff's July 18, 2009 Mental Residual Functional Capacity Assessment. (R. 26, 386.)

14

questions posed to the vocational expert must fairly set out all of the claimant's impairments, the question need only reflect those impairments supported by the record." *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003). Additionally, "the hypothetical question may omit non-severe impairments, but must include those that the ALJ finds to be severe." *Id.* An ALJ "has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, 166 F.3d 1209 (4th Cir. 1999).

Here, the ALJ presented multiple hypotheticals for the VE. One hypothetical included whether sedentary work was available with the Plaintiff's age, education, and work experience with a limitation that an individual "has to shift positions every [twenty] minutes sitting, standing . . . ." (R. 525.) In this instance, the VE found two possible positions for Plaintiff in the general economy. (*Id.*) However, in the ALJ's decision, he found Plaintiff did not have a sit/stand limitation, and:

> is able to sit, stand or walk more than 2 hours each during a normal 8-hour workday, and is able to lift or carry more than 10 pounds occasionally and 20 frequently. She can occasionally climb ramps or stairs, but no climbing ladders, ropes or scaffolds. She can do repetitive tasks and have limited contact with the public and co-workers. She should avoid concentrated exposure to extreme cold and vibrations.

(R. 22-23.)

The ALJ was permitted to include the sit/stand limitation, even if the limitation was not included in the RFC. *Koonce*, 166 F.3d 1209. Although the ALJ gave the RFC "substantial weight," the ALJ considered the entire record in reaching his determination. (R. 22-26) As discussed above, the ALJ used substantial evidence in reaching his decision and was not "patently wrong" in his

15

analysis. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

## IV.  RECOMMENDATION

In reviewing the record, the Court concludes that the ALJ's decision was based on substantial evidence, and **RECOMMENDS THAT**:

1. Ms. Akers's Motion for Summary Judgment be **DENIED**; and

2. Commissioner's Motion for Summary Judgment be **GRANTED** for the reasons set forth.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).


DATED: August 22, 2014                    /s/ *James E. Seibert*
                                          JAMES E. SEIBERT
                                          UNITED STATES MAGISTRATE JUDGE